STARLING *v.* WEIR PLOW Co. *et al.*[1]

*(Circuit Court, N. D. Illinois, S. D.* August 20, 1891.)

1. PATENTS FOR INVENTIONS—PATENTABILITY—NOVELTY—SULKY PLOWS.
    The first claim of letters patent No. 154,293, issued August 18, 1874, to William Starling, for an improvement in sulky plows, consisting of the combination of a crank-bar with the plow-beam, lever, and axle, so that the horses are made to raise the plow out of the ground, is void for want of novelty.
2. SAME—RES ADJUDICATA.
    A decision that a patent which has three claims covering different features of the device is not void for want of novelty does not render the question of novelty *res adjudicata,* when a single one of the claims is attacked in a subsequent suit for want of novelty, and proof is introduced in such subsequent suit that was not offered in the former suit.

In Equity. Bill by William Starling against the Weir Plow Company and William Weir to restrain an alleged infringement of a patent.

[1] Reported by Louis Boisot, Jr., Esq., of the Chicago bar.

*W. H. Wells*, for complainant.
*Bond, Adams & Pickard*, for defendants.

BLODGETT, District Judge.   This is a suit charging the defendant with infringement of patent No. 154,293, granted August 18, 1874, to complainant, for an "improvement in sulky plows," and praying an injunction and accounting.   The plow described in the specifications and drawings of this patent consists of a two-wheel sulky plow, with an arched axle, or an axle bent downward towards each end; the spindle for the right-hand wheel being a horizontal projection from the portion so bent downward.   Pivoted upon the vertical part of the axle, just above the angle from which the right-hand wheel spindle projects, is what the patentee calls a "crank-bar," which extends backward and transversely across, nearly from hub to hub, and is also pivoted to the lower end of the vertical part of the axle, near the spindle of the left-hand wheel; and the plow-beam is attached to the transverse part of this crank-bar, near the middle of the bar, by a jointed coupling, so that the plow-beam can rock upon its attachment to the crank-bar, and the forward end of the beam be raised and lowered by rocking this crank-bar.   A lever rigidly connected with this crank or bail extends upward to the driver's seat, so that by the movement of this lever by the driver the crank-bar may be rocked and the plow raised or lowered.   There are other features of the plow, not now in controversy, which it is not necessary, for the purposes of this case, to describe.

Infringement is charged only as to the first claim, which is:

"(1) The crank-bar, K, combined with the plow-beam, N, lever, L, and axle, A, as and for the purpose set forth, so that the horses are made to raise the plow out of the ground."

The defenses relied upon are: (1) That the patent is void for want of novelty; (2) that defendants do not infringe.

The material question in the case, in my judgment, is as to the patentable novelty of the device, in the light of the state of the art as disclosed in the proof.   This patent was before the United States circuit court for the district of Minnesota in *Starling v. St. Paul Plow-Works*, 29 Fed. Rep. 790, and 32 Fed. Rep. 290, and there sustained.   That case was a suit at law brought by complainant, as owner of this patent, upon a contract or license given by him to the St. Paul Plow-Works, by which the licensee was permitted to manufacture and sell plows made under this patent, within certain territory, for a royalty of $2.50 per plow. After the defendant in that case had made and sold 35 or 40 plows under the license, notice was given to the patentee that the plows were unsatisfactory; that many of them had been returned as unserviceable; and that the licensee renounced the license, and would thereafter manufacture plows of its own design.   After this notice and renunciation of the license, the licensee made about 1,300 plows after what it called its own design, on which it refused to pay the royalty called for by the license, whereupon the patentee brought suit to recover his royalty or license fee,

claiming that the plow designed and made by the licensee after the renunciation of the license contained the features covered by the patent. The question properly in issue in that case was whether the plows made by the defendant, on which it refused to pay royalty, embodied the features, or any of them, covered by the claims of the patent. The court held, properly, as I think, that as defendant had, by its answer in the case, denied the novelty of the device covered by the patent, and plaintiff had not replied an estoppel under the license, proof upon the question of novelty was admissible; and, under this ruling, proof of the issue of several prior patents was heard and considered. The plaintiff's patent has three claims, covering different features of the device; and it is obvious that, if the plows made by the defendant in the Minnesota case contained features covered by any of these claims, then it was liable for a license fee. This case differs, then, from the Minnesota case, in two essential particulars: *First,* only one claim is in controversy here, while the whole patent was in controversy there; and, *second,* defendants have introduced in this case a large amount of proof which was not offered in that case; and I think it but right to say that I think the Minnesota case was properly decided upon the issues and proofs before that court. The Minnesota case is invoked here under a rule of comity which prevails between federal courts of co-ordinate jurisdiction when a question which has been decided in one is raised in another, upon substantially the same facts. If the facts in the later case essentially differ from those of the adjudged case, then the rule of comity has no application, or its application is limited. While, therefore, this court would be very glad to consider the question of novelty as *res adjudicata,* and follow the Minnesota case, it is plain that, as the proofs in this case differ from the proofs in that case, we must examine the question of novelty here upon the proof now presented, instead of resting upon the former decision.

I do not deem it necessary to analyze all the prior patents which have been put in proof in this case. It is enough, I think, to say that it clearly appears from the proof that crank or arched axles are old in the art, and that crank-bars, bails, or yokes,—for the same thing is known by these different names in the art,—as a means of raising or lowering the plow-beam, were well known in the art prior to the plaintiff's patent. A patent to William Mason, of January, 1869, for an "improvement in gang plows," shows an arched axle with a frame to which the plow-beams were attached, and a crank-bar so arranged in connection with the frame that when the crank-bar was rocked by means of a lever at the driver's seat the plow-beams were raised or lowered. It is true this Mason patent shows two crank-bars,—one under the rear and the other under the forward end of the frame to which the plow-beams were attached,— both of which crank-bars were rocked by the lever; but the principle or idea of a crank-bar operating with an arched axle and lever as a means for raising or lowering the plow-beam is, I think, clearly developed in this patent. In the Worrell & Rynearson patent of March, 1871, a plow is shown with a bent or arched axle, and underneath the axle are pivoted two bars projecting to the rear of the axle, where their rear end

is connected by a cross or transverse bar to which the plow-beam is attached, or, as the specification says, "this transverse or cross bar may be made a continuation of the rearward projecting arms." One of these arms, so pivoted to the axle, also extends forward of the axle, and forms a lever, by means of which the crank-bar may be rocked and the plow-beams raised or lowered; the driver, from the location of the lever, rocking the lever with his foot instead of his hand, as in the complainant's patent. It is obvious, I think, that by merely bending this arm of the Worrell & Rynearson crank-bar, which extends horizontally forward of the axle, upward, so that the driver could operate it with his hand, it would be, in function and mode of operation, the crank-bar and lever of the complainant's patent, and thus to bend the lever of the crank-bar upward to the driver's seat, or where it can be reached and operated by the driver's hand, instead of his foot, is a mere mechanical change, which would not involve invention. The Owens patents of February, 1872, and November, 1872, also show a crank-bar or yoke, as it is called in these patents, to which the plow-beam is attached or hung, which yoke, when tilted or rocked by means of a lever extending up to the driver's seat, raises or lowers the plow-beams. We have in these four patents, as it seems to me, a complete anticipation of the complainant's crank-bar, and in all those patents the crank-bar co-operated with the arched or bent axle, and a lever which rocked the crank-bar, to raise and lower the plow-beams, thus containing all the elements of the first claim of complainant's patent, combined, operating, and producing the same result produced by the complainant's combination. It is true that in several of these older patents the crank-bar is incumbered with other auxiliary devices; but, for the office performed by the crank-bar in complainant's patent, they are essentially the same as complainant's crank-bar. It is true that complainant states in his specifications, and assumes to cover by his first claim, the feature that by the operation of his crank-bar and lever the forward end of the plow-beam is first raised, so that the plow is run out of the ground by the forward movement of the team. It is apparent to any one at all familiar with the operation of plowing that it depends solely upon the location of the attachment of the plow-beam to the crank which determines whether the forward end of the plow-beam will rise first when the crank is rocked so as to lift the plow-beam, and it does not seem to me a patentable device to so locate the point of attachment of the beam to the crank-bar as to secure this result. It is also noticeable that Mr. Starling nowhere in his specifications or description of his device gives any instruction as to location of the attachment of the beam to the crank which will secure the lifting of the forward end of the beam first. Undoubtedly any mechanic who wished to so construct his plow as that the crank, when rocked in the right direction, would lift the forward end of the beam first, would simply attach the beam to the crank forward of the center of gravity of the plow when running in the ground; in other words, so locate it that the plow, when working, would offer more resistance behind than forward of the point of attachment.

The proof in the case also shows several patents on plows prior to the Starling patent where the plows were organized so as to raise the forward end of the plow-beam first, among which are the Baker patent of December, 1860; the Frasier patent of April, 1861; the Sattley patent of February, 1864; the Davenport patent of February, 1864; and the Davenport patent of February, 1866. So that the advantage of first raising the point of the plow, instead of the heel, in order that the forward movement of the team would aid in running the plow out of the ground, was well known in the art long before the complainant's patent. And although the lifting devices of these old patents may not have been the same as used by complainant, the forward end of the beam was lifted, and the advantages of doing so well understood, before this patentee adopted his method; and it certainly did not require inventive genius to apply to any plow, at the date of complainant's patent, the idea of lifting the forward end of the plow-beam first in order to secure the aid of the team in running the plow out of the ground, and in any of these old bail plows that end could be secured by locating the bail forward of the center of resistance.

For these reasons, I conclude that the first claim of the complainant's patent is void for want of novelty. Bill dismissed for want of equity.