[No. 5653.]

## BATES v. HALL.

1. **Water Rights—Evidence of Title—Possession and use is** prima facie evidence of title.—P. 363.

2. **Water Rights—Change of Point of Diversion—The right** of one of the petitioners under the act of March 27, 1903, for leave to change the point of diversion, being merely equitable and inchoate, it was held proper to permit the holder of the legal title to file his written consent to the change.—P. 364.

It is error, in such proceeding, to decree that the petitioner may change the point of diversion of a specified fraction of the water· of the ditch without determining, where this is in

question, what volume of water was, by a previous general decree, awarded to such ditch.—P. 365.

The length of time the petitioner may use the water at the new place of diversion is not to be settled by the decree in the special proceeding prescribed by the Act of March 27, 1903 (Laws of 1903, 278), unless it appears that, if the decree be not limited in that respect, injury will necessarily or by reasonable inference result to a third person.—P. 369.

Provision must be made by the decree to protect the rights of third persons. If the circumstances are such that this is impossible, the petition should be denied, e. g.: where it appeared that, by the proposed change, a junior appropriator would be deprived of a share of a volume of water, the result of seepage, it was held error to make no provision against this.—P. 369.

3. **Water Rights—Adjudication of Priorities—Decree**—The general decree adjudicating the priorities to the use of water in a district is to be entered in the judgment book. That is the best evidence of what the decree was. A paper found in the office of the clerk of the court, purporting to be a subdivision of a general decree awarding priorities, though bearing the approval of the judge then presiding in the court, does not control the judgment book.—P. 366.

4. **Judgment—Evidence of**—The judgment book is preferred to a paper found in the clerk's office and purporting to be the decree of the court in the same matter, even although it bears the approval of the judge of the court then presiding.—Pp. 366, 367.

5. **Water Rights—Adjudication of Priorities, Decree**—A decree giving the width, depth and grade of the ditch is not void merely for its failure to give its capacity in second feet.—P. 368.

Nor for its failure to specify the area which may be irrigated from the ditch, where the preliminary statement required by the statute contains the acreage. The decree will, by intendment of law, be limited to the acreage set down in the decree. —P. 368.

6. **Judgments—Construction of**—A decree is to be construed with reference to the other portions of the record, e. g.: a decree declaring the priority of a certain ditch to the use of a certain volume of water, but not specifying the acreage of the lands irrigated therefrom, may be supplemented by reference to the preliminary statements of the ditch owner.—P. 368.

7. **Evidence — Competency** — When the decree adjudicating priorities in a district fails to specify the number of acres of land to be irrigated from a particular ditch, the omission may,

in a proceeding to change the place of diversion, be supple-
mented by the evidence of the acreage actually irrigated after
the entry of the decree.—P. 368.

*Appeal from El Paso District Court.*
*Hon. Louis W. Cunningham, Judge.*

Mr. GEORGE W. MUSSER and Mr. W. S. MORRIS,
for appellants.

Mr. HENRY McALLISTER, Jr., Mr. NEWTON S.
GANDY, Mr. BRANCH H. GILES, Mr. FRANK McDON-
NOUGH and Mr. CLARENCE J. MORLEY, for appellees.

Mr. JUSTICE CAMPBELL delivered the opinion of
the court:

In a special proceeding brought for that purpose
under the statute (Session Laws 1903, p. 278), of
which due notice to the parties affected was given,
the district court rendered a decree permitting the
two petitioners to change from the Stubbs and Miller
ditch, which takes water from Fountain creek in
water district No. 10, El Paso county, to ditch No. 2
of the Fountain Valley Company farther up the same
stream and in the same water district, the point of
diversion of their right to the use of water for irriga-
tion, each petitioner claiming a one-sixth interest in
the quantity theretofore awarded to the Stubbs and
Miller ditch by the general statutory decree of 1882,
which settled the relative priorities of the ditches in
that water district. The respondents, who are own-
ers of the Laughlin ditch in the same district, whose
headgate is between the headgates of the Stubbs and
Miller and the Fountain Valley ditches, about two
and a half miles above the former and one-half to
three-fourths of a mile below the latter, have ap-
pealed from this permissive decree.

1. The first objection which they urge thereto
is that petitioners failed to show that they are owners

of the water rights whose point of diversion they asked to have changed. By many decisions of this and other courts in the arid states the right to the use of water for irrigation is regarded as real estate, and the proper method of passing title thereto is by deed of conveyance. There was no proof of a paper title in petitioners, and the specific objection which respondents make is that where, as here, title to real estate is directly involved and is a material issue, oral testimony by a witness that one party is or is not the owner is not competent, and they cite *Hite v. Stimmell*, 45 Kan. 469; *Simpson v. Smith*, 27 Kan. 566. It may be conceded that these cases announce the general rule. Upon the hearing the court did permit some of the witnesses to testify that petitioners were the owners of the water rights. There was, however, other and uncontradicted evidence that petitioners were in possession of the water rights and of the lands for irrigating which the water was appropriated, and had used water for that purpose and were recognized by other owners of rights in the same ditch as the owners of the respective interests which they claimed. It is matter of common knowledge that in this state many of the earlier water rights, which are acquired by appropriation and not by grant, have not passed by deed from the original appropriators; hence there is no record evidence, or perfect chain, of title in such cases. Few of the present owners could prove their title if the strict rule contended for by respondents is enforced. Proof of possession and use is *prima facie* evidence of right and, if not overcome by stronger evidence, satisfies the requirement of this statute that a petitioner must establish a right to the use of water before relief is granted. Moreover respondents themselves were obliged to resort to the same kind of evidence to establish their ownership of water

rights in the Laughlin ditch which they claim would
be injuriously affected by the proposed change. Re-
spondents have no standing in court unless they are
owners of a water right. If proof of petitioners'
rights is, for the reason indicated, insufficient, re-
spondents' proof is likewise defective. If respond-
ents have no water rights to protect, they are not in a
position to interpose an objection that petitioners'
proof in the respect noted is insufficient. It neces-
sarily follows that under the facts respondents can-
not be heard to object to the alleged insufficiency of
petitioners' evidence of ownership.

2.   During the course of the hearing it developed
that one of the petitioners, The Fountain Valley
Land & Irrigation Company, had no interest in the
water right, ownership of which it alleged in the
petition, except such as is derived from a contract of
sale which it had made with May L. Skinner, which
contract had not then matured and legal title was
still in Mrs. Skinner. A continuance of the hearing
was had for several months, and on its resumption
Mrs. Skinner having died after the contract was
made, the executors of her estate and her sole heir
at law and devisee under her will, under authority
given them by the county court of Arapahoe county
in which the estate was being administered, filed a
written statement or petition in this proceeding,
wherein, after reciting the making of the contract be-
tween Mrs. Skinner and the irrigation company, and
that it had been substantially complied with up to
date by the latter, they stated that they consented to
the proposed change in the point of diversion. Re-
spondents protest that the court committed error in
permitting this paper to be filed, and say that as the
executors and heir and devisee never asked to be
made, and were not made, parties to the proceeding,
it was irregular and prejudicial to respondents for

the court to attach any weight whatever to such intervention. It does not clearly appear from the record why the continuance was had, but probably it was granted at the request of petitioners in order that they might furnish additional proof of ownership, or for the substitution of parties petitioner, or that additional parties might be brought in. Whatever the object was, we cannot see how respondents were prejudiced by the action of the court in permitting the holders of the legal title to come in and give their consent. The legal owners certainly were interested in the subject-matter and the object of the proceeding, and might either consent or object to the change proposed. That they chose to join with the equitable owners in seeking the relief asked is not a matter of which respondents can complain, neither is any supposed irregularity in allowing the paper evidencing their consent to be filed a just cause of objection.

3. Under this statute we consider it necessary that a petitioner show a right to the use of a certain quantity of water from a public stream for irrigation as a condition precedent to obtaining a decree permitting a change in its point of diversion. To decree in favor of such change where the volume is not fixed would probably lead to useless litigation between rival claimants and the water commissioner. As evidence of such right petitioners, over respondents' objection, introduced what is referred to in the abstract as "Exhibit A," which, on its face, purports to be that subdivision of the general statutory decree of 1882 pertaining to the Stubbs and Miller ditch, the one-sixth interest in which owned by each petitioner they asked to have transferred. The clerk testified that he presumed the exhibit was a part of the files, as it was found in his office and afterwards bound in book form. On the back of it was the in-

dorsement of the then presiding judge of the court approving the findings made by the referee and the draft of the decree reported by that officer. If this exhibit was the original decree, as approved by the court, the Stubbs and Miller ditch was awarded priority No. 6 on the Fountain creek for a ditch of the capacity of one and one-half by five feet on a grade of nine feet to the mile. In the judgment book of the court, in which by section 21 of the act of 1881 these decrees must be entered of record, the subdivision of the general decree pertaining to the Stubbs and Miller ditch was entered of record as required; and this judgment book shows that to the Stubbs and Miller ditch was awarded priority No. 6 for a ditch of one foot by four feet on a grade of nine feet to the mile. In neither was there any reference to the land or acreage for which the water was appropriated. It will be observed that there is a material difference between the carrying capacity of the ditch described in the exhibit and that described in the record entry. Two competent engineers at the trial testified that the carrying capacity of the latter was 6.86, and of the former 16.34, cubic feet per second of time. When this variance in the proofs was brought to the attention of the trial judge, he said that it was for him to determine whether the exhibit or record entry defined the rights of the Stubbs and Miller ditch. But it appears that afterwards he changed his mind and did not make such determination. This is evident from the decree which contains the proviso that nothing therein should be construed as an adjudication as to the quantity of water to which the Stubbs and Miller ditch and its owners were entitled under the general decree of 1882, or by virtue of the diversion and appropriation of water therefrom. While it is averred in the petition that the quantity of water awarded

thereto is thirty cubic feet of water per second of time, and that each of the two petitioners owned a one-sixth interest thereof, or five cubic feet, the court inserted in the decree herein the proviso mentioned and yet permitted each petitioner to change the point of diversion of one-sixth part and portion of the water pertaining to the Stubbs and Miller ditch and to which he or it is entitled, without specifying what that portion is, and without stating in cubic feet per second what quantity of water had been decreed to the ditch. The court's first impression was right, and it should have determined which of the two documents evidenced the decree.

In view of further proceedings the following observations are for the guidance of the trial court. The general statutory decree was required to be entered in the judgment book of the court. As thus spread on the records it is the best evidence of what was adjudicated in that proceeding. If it is different from the decree as reported by the referee, the presumption is the latter was modified by the court after the report was filed and before the entry was made. Upon the showing in this record, it is doubtful if "Exhibit A" was sufficiently identified to justify its admission as evidence at all. If, as claimed by respondents, it had been altered, the court should not have admitted it. If the decree as entered is different from the decree as actually pronounced, those making such contention should make the entry speak the truth. Until it is so corrected, it is binding on all the parties and prevails over the exhibit, even though the latter contains what the court decided.

Neither in the exhibit nor in the record entry was the quantity of water specified in second cubic feet. Petitioners say that in *Broadmoor Dairy & Live Stock Co. v. Brookside Water & Improvement*

*Co.,* 24 Colo. 541, a similar subdivision of the same
decree contained sufficient data from which the quan-
tity of water decreed to the ditch then in controversy
could be, and was, computed. In that case the width,
depth and length of the ditch, but not the grade, were
designated, but the number of acres of land to be
irrigated thereby was given, and the court held, since
it could be readily ascertained what amount of water
was required to irrigate that acreage, and the decree
having been in force for many years and acquiesced
in by the parties in the distribution of water there-
under, that the decree would not be set aside because
of its alleged insufficiency to show the quantity of
water awarded. In that case, unlike the one in hand,
the number of acres of land was given, but here the
width, depth, and grade of the ditch are given, and
from these three items can be ascertained the carry-
ing capacity of the ditch. As a priority may be
measured both by volume and time, the number of
acres of land lying under the ditch which it was pro-
posed to irrigate is material, at least as to the element
of time. The decree is silent as to that. It is not
necessarily void because of this omission. The stat-
ute requires that the owners of each ditch in the
district shall file a statement of their claim of water,
and in this statement they must state the number of
acres of land lying under the ditch which are proposed
to be irrigated with water therefrom. We are en-
titled to presume that this preliminary statement was
filed by the owners of this ditch, and that the acreage
was given. Upon the supposition that it was filed it
will be presumed that the decree fixing the volume,
represented by the carrying capacity of the ditch, was
intended to be limited to the acreage described. As
throwing light on this issue, the actual use of the
water—that is, the extent of the use within a reason-

able time after the decree was rendered—is relevant.
From all these sources the appropriation, both as to
volume and time, is, or may be, susceptible of deter-
mination.

The length of time petitioner may use the water
after the point of diversion is changed, if not the
same question as enlarged use, is analogous thereto;
and probably ought not to be decided in this special
proceeding—unless such duration necessarily results
in an enlarged use, as explained later on—but should
be litigated, if at all, in an appropriate proceeding in
case of a controversy between the parties over the
same after the change is made.    The volume in cubic
feet per second, however, should be ascertained in
this proceeding before entering a decree permitting
the change to be made.

4.   As has been frequently decided by this court,
the right to a change of the point of diversion or
place of use is not an absolute, but a qualified, right,
which section 2 of the statute under which this pro-
ceeding was instituted recognizes by providing that
such change, if it injuriously affects the vested rights
of others, shall not be made, or if such injury appear,
the court shall decree the change only upon such
terms and conditions as may be necessary to prevent
such injurious effects, and if impossible to make such
terms and conditions, the application must be denied.
The evidence in this case without contradiction shows
that the respondents as owners of the Laughlin ditch
would be injuriously affected if the prayer of the
petitioners was granted.  The Stubbs and Miller
ditch, of which each of the petitioners alleged a one-
sixth ownership, has priority No. 6 on the Fountain
creek in this district.   Respondents are owners of
the Laughlin ditch, which has priorities Nos. 10 and
17.   The petitioners propose to change the point of

diversion from the Stubbs and Miller ditch to the headgate of ditch No. 2, belonging to The Fountain Valley Ditch Company, farther up the stream. Between the old and proposed new point of diversion is the headgate of the Laughlin ditch. After all the water of the stream is taken out through the Laughlin ditch, as the result of seepage and springs, a volume of water rises in the bed of the stream below the headgate of the Laughlin ditch and above that of the Stubbs and Miller ditch of from three to five cubic feet per second of time. If the quantity, or any portion thereof, decreed to the Stubbs and Miller ditch is diverted at a point on the stream above the headgate of the Laughlin ditch, the latter being junior in point of time, it necessarily follows that the Laughlin ditch will be deprived of the benefit of such seepage and spring waters, or such portion thereof as the amount of water proposed to be changed bears to the entire quantity of water to which the Stubbs and Miller ditch is entitled. It is not a sufficient answer to say that two-thirds of the decreed capacity of the Stubbs and Miller ditch must still be taken out at its headgate, and in times of scarcity the Laughlin ditch would be closed down until after the Stubbs and Miller, and other ditches farther down the stream prior in point of time, are satisfied. The Laughlin ditch would still be deprived of the benefit of the indicated proportion of the seepage and spring water arising between its headgate and that of the Stubbs and Miller ditch. Whether the injury which would result to the respondents if the proposed change was made could be provided against by terms and conditions in the decree, we do not say. That they would be injured is clear, and the court did not attempt to provide against this injury, but entered an absolute decree permitting the change to be made. If no

other error had been committed by the trial court, this one alone would require a reversal of its judgment.

In this connection it is proper to consider the objection of respondents that the court refused their offer of evidence to show the change in the conditions affecting them which would ensue if the new point of diversion is permitted. The court did give full scope to the parties in the production of evidence in respect to the flow of seepage and spring water between the headgates of the Laughlin and the Stubbs and Miller ditches, and in this particular respondents have no just cause of complaint. It appears, however, that petitioners proposed to change not only the point of diversion, but the place of use, and to carry the volume of water which they claimed to own through a new ditch and for the irrigation of other lands and for filling a reservoir at a distance of four or five miles beyond the lands to irrigate which the appropriation was originally made. Respondents claim, and offered evidence to show, that thereby there would necessarily be an enlarged use, both as to volume and time. In *Irrigation Co. v. Water S. S. Co.*, 29 Colo. 469, we said that it was not proper, in a proceeding to change the point of diversion, to go into the question of an enlarged use which the petitioner might make of the water after the point of diversion was changed; but this was immediately qualified by the statement that if the evidence showed that the changed conditions necessarily, or by reasonable inference, would result in an enlarged use, the petition should not be granted. In the light of the offer made by respondents, the court should have permitted pertinent evidence, if any, to show that the proposed change would necessarily cause the injury which they alleged would be inflicted.

For the foregoing reasons the judgment is reversed and the cause remanded, with instructions to the district court, if further proceedings be had, that they be in accordance with the views herein expressed.            *Reversed and remanded.*

CHIEF JUSTICE STEELE and Mr. JUSTICE GABBERT concur.