[No. 8191.]

## FORT COLLINS MILLING & ELEVATOR COMPANY ET AL. V. LARIMER & WELD IRRIGATION COMPANY.

1. WATER RIGHTS—*Change of Point of Diversion.* Every appropriator of water from a natural stream, having a decreed priority, is entitled to have the conditions existing at the time of his appropriation substantially maintained. A change in the point of diversion of the water awarded one appropriator will be denied, if it appears that such change will materially injure other appropriators. (53.)

The evidence examined and the change permitted by the decree of the District Court held to occasion material injury to the protestants. (49-51.)

2. —— *Error—Preparation of the Record.* Error lies to a decree authorizing the change in the point of diversion of water. The bill of exceptions is to be framed, and the record prepared as provided by chapter 6 of the Acts of 1911. (47.)

3. —— *Adjudication of Priorities—Decree.* The law limiting the volume of water allowed to any appropriator to what is sufficient for the purposes of his appropriation is read into every decree granted under adjudication proceedings. Waste or excessive use is impliedly prohibited, even though the volume awarded may, at times, be more than is needed for the purpose set down in the decree. (53.)

4. —— *Appropriations of Water Prior to the Adoption of the Constitution,* stand upon the same footing as appropriations subsequently made. They are tested by the same principles, and controlled by the same rules and regulations, save as affected by the classification made in the Constitution. (57.)

The phrase "not heretofore appropriated," in sec. 5 of article VI of the Constitution, is a mere recognition of the rights acquired by appropriations then already existing.

5. EVIDENCE—*Relevancy.* A decree adjudicating priorities awarded to a certain ditch a specified volume for several distinct purposes, not stating the volume awarded in respect of either purpose. The effect of the decree coming afterwards in question, *held* that a certified copy of the sworn statement of claim for such ditch was admissible, to assist in the interpretation of the decree. (47, 48.)

*Error to Larimer District Court.* Hon. NEIL F. GRAHAM, Judge.

Mr. H. N. HAYNES, for plaintiff in error, Fort Collins

Milling & Elevator Co., New Cache la Poudre Irrigating Co. and Greeley Irrigation Co.

Mr. FRANK J. ANNIS, for plaintiffs in error, Larimer County Canal No. 2 Irrigating Company, New Mercer Ditch Company, Arthur Irrigation Company, and Warren Lake Reservoir Company.

Mr. JOSEPH C. EWING, for plaintiff in error, The City of Greeley.

Mr. L. R. RHODES, for defendant in error.

HILL, J., delivered the opinion of the court.

The defendant in error instituted this proceeding in the manner provided by sections 3226-3229, R. S., 1908, to change the point of diversion of 14.83 second feet of water from the headgate of The Chamberlain Ditch, taking its supply from the Cache la Poudre river, to the headgate of its canal some two miles down the stream. The plaintiffs in error, as protestants, filed objections. Upon trial to the court, a decree was entered permitting the change as prayed, for the entire 14.83 second feet, and unlimited as to use or time. Exceptions were taken; one hundred twenty days were allowed for bill of exceptions, which was tendered and approved within that time. The protestants, as plaintiffs in error, bring the case here for review on error. The defendant in error filed a motion to dismiss the writ of error, for the alleged reason, among others, that the only method by which such a decree could be reviewed was by appeal, as provided by section 3231, R. S., 1908. The motion was denied upon this contention but other questions raised by it were reserved for final hearing. See *Fort Collins M. & E. Co. v. Larimer and Weld Irr. Co.*, 58 Colo. 183, 143 Pac. 1091.

Counsel claim, although the case be reviewable on error, that the record can only be perfected for such review in the

manner provided by the general adjudication acts, as section 3226, *supra*, concerning the change of point of diversion, provides that the same procedure shall be followed in this class of cases as in general adjudication matters.   We agree that the same procedure, except as otherwise provided in the latter act, must apply to both; but we cannot agree that the act of 1911 was not intended to apply to either in perfecting a record for this court; its language will not permit of such a limited construction.   It will be observed that section 6 of the 1911 act repeals all statutes granting and regulating appeals, etc.   The method providing for a record for review under the general adjudication act is a regulation in connection with the appeal.   By the language used, it not only repeals that portion of these statutes granting such appeals, but includes the portions regulating such appeals. The act of 1911 provides a complete method for the preservation of a bill of exceptions in order to have such questions reviewed by this court, and, in our opinion, it was intended thereby to supersede that portion of the general adjudication act which also applies to proceedings where the change of point of diversion is involved concerning the method by which such cases are to be brought to this court for review.   The decree sought to be reviewed was not rendered until nearly a year after the 1911 act took effect, and was perfected before the new rules, adopted June, 1914, went into effect; for which reasons we are of opinion, not only that the writ of error was proper, but that the bill of exceptions was perfected in the manner provided by law as it then existed.

Many errors are assigned to the admission and rejection of testimony.   We shall consider but two of them, as the others may not arise again.   The protestants offered in evidence a certified copy of the sworn statement of claim for The Chamberlain Ditch filed in the proceedings in which its priority decree was obtained.   They also offered a certi-

fied copy of all evidence presented in its behalf in said matter. Both were rejected as immaterial. In this the trial court erred. The decree for this ditch, offered in evidence by the petitioner, awards it 14.83 second feet of water for irrigation, domestic, milling and churning purposes, but does not state the amount which was awarded for irrigation and domestic or power purposes. These matters were left uncertain and indefinite in the decree. They were proper and material to be shown and considered in order that the trial court might be better able to ascertain whether the rights of juniors would be injuriously affected by the proposed change. Referring to a similar sworn statement of claim in *New Mercer Ditch Co. v. Armstrong*, 21 Colo. at page 362, 40 Pac. 990, this court said:

"These statements may be likened to a pleading upon which a judgment is based, and they are proper to be introduced along with the decree to enable the court to interpret or construe the latter in the light of the claimant's own assertion of his demand. Both the law under which this decree was rendered and the decree itself contemplate that no claimant shall be entitled to the use of a quantity of water in excess of that actually needed for the purpose for which the appropriation was made."

This opinion is conclusive of the competency of the sworn statement as testimony in this action. Among other things, this statement recites that "the area lying under being and proposed to be irrigated from this ditch is about one hundred acres." The statement does not allege the amount used for irrigation, or ever diverted into the ditch. On that subject it gives the ditch's dimensions, and the acreage being and proposed to be irrigated, that is in 1881, at the time it was filed. Such being the case, and the evidence in that proceeding being by statute required to be preserved and filed, it was properly admissible in evidence to explain anything uncertain or indefinite, as these matters

were left in the decree.—*Bates v. Hall,* 44 Colo. 360, 98 Pac. 3; Freeman on Judgments, Vol. 1 (4th Ed.) §§ 273, 274; *Russell v. Place,* 94 U. S. 606, 24 L. Ed. 214; *Cromwell v. County of Sac,* 94 U. S. 351, 24 L. Ed. 195; *Lewis v. Ocean Nav. & Pier Co.,* 125 N. Y. 341, 26 N. E. 301; *Littleton v. Richardson,* 34 N. H. 179, 66 Am. Dec. 759; *Washington G. L. Co. v. Dist. of Columbia,* 161 U. S. 316, 16 Sup. Ct. 564, 40 L. Ed. 712; Greenleaf on Evidence, Vol. 1, § 511; *Fowler v. Doyle,* 16 Iowa 534; Wigmore on Evidence, Vol. 3, § 2116; *Campbell v. Rankin,* 99 U. S. 261, 25 L. Ed. 435; *Geneva Nat. Bank v. Independent School Dist.* (C. C.), 25 Fed. 629; *Starling v. Weir Plow Co.* (C. C.), 49 Fed. 637; *Davis v. City of Clinton,* 58 Iowa 389, 10 N. W. 768.

There is very little, if any, conflict in the testimony concerning the material facts, so far as they were allowed to be shown. By the general adjudication decree in this water district bearing date April 11, 1882, The Chamberlain Ditch was found to be a ditch to irrigate lands, and for domestic purposes, milling and churning. It was awarded for these uses and benefits priority No. 16 for 14.83 second feet of water as of date April 1, 1866. The testimony discloses, that it was but a small ditch, constructed along and near the river, to irrigate but a small tract of what is called low lands; that the total area ever irrigated therefrom has never exceeded seventy-five acres, all of which lies near the river; that the subsoil is of a gravel nature, and for this reason requires more water than upland; that the top soil varies in thickness from three or four feet down to where the gravel comes to the surface; that the water underneath is always somewhat near the surface, but varies with the heighth of water in the river; that the natural drainage is into the river.

Eliminating the dispute as to how much was used for power purposes prior to 1882, it is agreed that none has ever been used since for such purposes; that since 1882 up to the

time of trial, between sixty and seventy-five acres are all
that have ever been irrigated through said ditch, by virtue
of said decree, and that none of the water awarded to it
under claim thereof has ever been used elsewhere; that prior
to 1882 when any water was used for power purposes, which
was for churning, it was run but a few hundred feet from
the river and, after being thus used, was immediately re-
turned to the stream; that upon account of the conditions,
subsoil, etc., the water used upon the land under this ditch
seeps away very fast, for which reason, a liberal amount is
needed, and has, at times, been thus used for its irrigation;
that it has been the custom of the owners thereof to thus
use it intermittently, when needed for their crops, and for
such reasons to use large amounts at a time, but that during
all these years they have only used sufficient for this pur-
pose, namely, the irrigation of not to exceed seventy-five
acres of land, and that when not needed for this purpose, it,
or the remainder not being used, has been allowed to remain
in the stream, which has been the major portion of the
time, and when thus turned off it is used by junior ap-
propriators; that upon account of the nature of the soil
covered by this canal, its subsoil, etc., the waters used for
the irrigation of the sixty to seventy-five acres thereunder
soon thereafter find their way back into the river with a
small per cent of loss consumed by vegetable life, surface
evaporation, or in other ways, and that the portion returned
to the river in this manner has likewise been used by the
protestants and others with junior priorities to supply their
needs upon the stream, during the past thirty odd years;
that the entire normal flow of the Cache la Poudre river
has been appropriated, and at times is inadequate to supply
all the priorities awarded from it to the protestants and
others; that the petitioner is the owner of a large canal,
which takes its supply from this stream, with its headgate
between two and two and a half miles below the headgate

of The Chamberlain Ditch; that its priorities are junior to The Chamberlain Ditch, and the most of them junior to the most of those of the protestants; that its canal is about forty miles long, and extends far away from the river upon the opposite side of the stream from The Chamberlain Ditch; that it crosses Dry Creek, Box Elder and Black Hollow; that all kinds of crops are grown thereunder, and that its consumers have pressing need for this water, and if transferred they will use all of it in the large canal during the entire irrigation season; that while a portion of the seepage from the lands under what is termed the upper portion of this canal naturally goes back to the river somewhere, the greater portion would not, and the return waters covering the major portion of the lands thereunder find their way toward or into what is called Greeley No. 2 Ditch, with its headgate twelve miles lower down the river, and in other places on down the river, a considerable distance below the headgates of the protestants' ditches; that most of the protestants own priorities upon this stream junior to The Chamberlain Ditch, but senior to the priorities of the petitioner, or to most of them. To summarize, when considered as a whole, the undisputed testimony is to the effect that if this change is allowed, it will take from seventy-five to ninety per cent of 14.83 second cubic feet from the supply heretofore enjoyed by the protestants, the most of the time during each irrigation season, for the past thirty years upon account of the changed conditions. In other words, at times, The Fort Collins Milling and Elevator Company's ditch with headgate about three miles below, and with a junior priority to that of The Chamberlain Ditch, would get about twelve second feet less of its priority during the first half of May, and in August, and at some other times. The Arthur Ditch, with its headgate between the Chamberlain headgate and the headgate of the petitioner, would, at times, be similarly affected. The Larimer County Canal No. 2 Irrigating Com-

pany and The New Mercer Ditch Company, with their headgates a short distance above The Chamberlain Ditch, would, likewise, at times, be materially thus damaged. To size up the situation in the language of the witness John E. Field—a civil engineer of many years experience and former State Engineer—the result would be:

"The sum of the whole situation is that except at high stages there will be about 12 second feet of water less in the river available to juniors than heretofore. The particular junior affected at any particular time will depend upon the exact stage in the river, and with reference to its date of priority."

In its opinion, the trial court concedes that the right to change the point of diversion, though a property right, is not absolute. It then says, the change will not be permitted if it injures vested rights of others. It asked, will such injury result, and concludes that it will not if no greater amount of water is used, all the time, at the new point of diversion, than represented by the appropriation sought to be changed, viz.: 14.83 second feet. The court then says: "no one can be heard to complain of an enlarged use, because the use to become an enlarged use, whereby other appropriators could complain, would have to be a use which would go beyond the 14.83 feet as represented by the original decree." We cannot agree with this conclusion. Eliminating, for the purposes of this contention, the question of how much, if any, was awarded for power purposes, the decree under consideration contains certain conditions and limitations, among which the seventh thereof reads:

"This decree shall not be taken to adjudge to any present or future claimant of any ditch or reservoir, or party controlling the same, any right to divert by means thereof or by virtue of any appropriation herein adjudged, any water from any natural stream except to be applied to the

use for which said appropriation has been made; nor to allow any excessive use or waste of water whatever; nor to allow any diversion of water except for lawful and beneficial uses." Were this provision not in the decree, the result would be the same. It is well settled in this jurisdiction that the law which is read into every decree awarding priorities, limits it to sufficient for the purposes for which the appropriation was made, and does not authorize a waste or excessive use regardless of the fact that the maximum amount awarded may, at times, be more than is needed for the purposes for which it was decreed.—*New Mercer D. Co. v. Armstrong*, 21 Colo. 357, 40 Pac. 989; *Drach v. Isola*, 48 Colo. 134, 109 Pac. 748; *Crawford Clipper D. Co. v. Needle Rock D. Co.*, 50 Colo. 176, 114 Pac. 655; *Combs v. Agricultural D. Co.*, 17 Colo. 146, 28 Pac. 966, 31 Am. S. Rep. 275; *Milling & Elevator Co. v. Larimer & Weld I. Co.*, 26 Colo. 47, 56 Pac. 185; *Ft Lyon Canal Co. v. Chew*, 33 Colo. 392, 81 Pac. 37.

It is likewise well settled in this jurisdiction that the appropriators, from a natural stream having decreed priorities, are entitled to have the conditions existing upon the stream, at the date of their appropriations, substantially maintained, unless the change sought will not materially injure them.—*Vogel v. Minnesota Canal Co.*, 47 Colo. 534, 107 Pac. 1108; *Bates v. Hall*, 44 Colo. 360, 98 Pac. 3; *Baer Bros. L. & C. Co. v. Wilson*, 38 Colo. 101, 88 Pac. 265; *Handy Ditch Co. v. Louden Canal Co.*, 27 Colo. 515, 62 Pac. 847; *Fuller v. Swan River P. M. Co.*, 12 Colo. 12, 19 Pac. 836; *Siebert et al. v. Frink et al.*, 7 Colo. 148, 2 Pac. 901.

The evidence discloses, and the trial court concedes, that the changed conditions will result in an enlarged use, both as to amount and time, for which reason this court has heretofore held that in such cases the change should not be granted for any amount, unless upon terms as to time and amounts, so it will not injure the rights of juniors, if a case

where this can be done, otherwise it should be denied *in toto.* —*Irrigation Co. v. Water S. & S. Co.,* 29 Colo. 469, 68 Pac. 781; *Bates v. Hall,* 44 Colo. 360, 98 Pac. 3; *Baer Bros. L. & C. Co. v. Wilson,* 38 Colo. 101, 88 Pac. 265. See also, *Ft. Lyon Canal Co. v. Chew,* 33 Colo. 392, 81 Pac. 37; *Larimer County v. Poudre Valley Co.,* 23 Colo. App. 249, 129 Pac. 248; *Farmers' High Line & Res. Co. v. Wolf,* 23 Colo. App. 570, 131 Pac. 291.

The testimony discloses that a large per cent of the water used under this ditch returns to the river in a very short time after its use, and which the protestants then use in supplying their junior priorities; most all of which is denied them by the change. The trial court held, that the withdrawal of this water could not be considered a legal injury for the reason that no vested right of other appropriators could attach to artificial conditions under The Chamberlain Ditch, that is to say, no matter how much waste seepage and percolation may have existed under The Chamberlain Ditch, when these protestants made their junior appropriations it, in no way, inured to their benefit and no legal advantage resulted to them upon account thereof. This conclusion, although perhaps based upon a false premise, is in conflict with the ruling of this court in *Vogel v. Minnesota Canal Co.,* 47 Colo. 534, and in *Bates v. Hall,* 44 Colo. 360. See also *Larimer Co. v. Poudre Valley Co.,* 23 Colo. App. 249, 129 Pac. 248.

To sustain its conclusion that the juniors have no vested right in the return waters caused by artificial conditions, namely, by the waters being run through The Chamberlain Ditch and applied upon the land, the court says:

"It can not be questioned but what the owners of said ditch could so construct their canals and laterals that little or no seepage would escape their farms; or they could cease to use water for extended periods; or use it in small quantities so that the return water to the stream would be slight,

if any. It can not, therefore, be contended that other appropriators could compel the owners of the Chamberlain priority to so use it that some of it, either by waste, seepage, or both would continue for their benefit to be a fixed and constant flow. What vested rights could other appropriators have in the conditions created under said ditch?

The court holds that no vested right of other appropriators could attach to the artificial conditions under Chamberlain ditch. Otherwise conditions might easily arise whereby the owner of a water right would lose it entirely. Suppose the land on which the Chamberlain right ripened should become seeped or otherwise unfit to cultivate. Can it be said that thereby the ownership of the priority is lost? This is what it would amount to if the contention is sound that the 14.83 sec.-ft. must remain in the river or be used on the land where the right ripened. Whatever seepage might return to the river from said ditch in its present location is a mere incident to its use in which no one has a vested right."

The first difficulty with this line of reasoning is the erroneous assumption upon which it is based, namely; that there was decreed to this ditch for irrigation purposes to be run therein during the entire irrigation season 14.83 second feet of water for the irrigation of one hundred acres of land, viz., that this award was for this amount, regardless of the purposes and needs for which it was awarded. Eliminating the power priority contention, and again assuming, *arguendo*, that this amount was awarded to the claimants of this ditch by virtue of such appropriation for the irrigation of the lands thereunder, it was, as heretofore stated, to the extent of their needs in this respect, and no excessive use or waste was to be permitted. In such case, were we to accept the contention that this amount is needed for such a small body of land, because it is necessary that large amounts be used for short periods, the seepage therefrom would be returned to the river, and in case, as the court says, that a

ditch and its laterals is changed so that little or no seepage would escape therefrom, when applied to this ditch, then the amount now represented by the seepage would not be taken from the river, and the juniors would not, for that reason, be injuriously affected, or, if its consumers, as the court says, would cease to use water for extended periods or use it in small quantities, so that the return to the stream would be slight, if any, the result would be the same. So far as this ditch and the lands thereunder are concerned, in the past, the smaller the amount taken from the stream, the greater the amount left therein for the juniors, and the larger amount taken works a proportional larger amount of return water by seepage, etc. The question that when a person's needs become less upon a particular tract of land, whether he has the right to the use of the same amount of water as formerly, and can transfer it elsewhere, is not involved and has not thus far been urged by counsel. Neither is the question as to what may be done should the land upon which water is used become so seeped as to make further use unnecessary or unavailable under a ditch, and a discussion of these questions can well be left until a contention arises where such a state of facts is presented. As stated in former opinions of this court, each decision must necessarily rest upon the particular facts of that case.

Whether a change can be here made upon terms for any of this priority, or for how much, or for any, or what length of time, or times, is not proper to be determined until all the facts are before the court as hereinbefore outlined. Eliminating the power purposes contention, and as before stated, assuming that the entire amount was awarded for irrigation purposes, the uncontradicted testimony discloses that the change ordered will work a material injury to the protestants and for this reason alone it ought not to have been allowed as this decree calls for.

Counsel for defendant in error claim, that inasmuch

as this appropriation was made prior to the adoption of the Constitution, it was, by virtue of the clause "not heretofore appropriated" in section 5 of article XVI of that instrument impressed with a different character of property right than appropriations made subsequent to its adoption; that for this reason the right of title to divert 14.83 second feet became vested in 1866, and this gave a private property right to the owner of the ditch for that amount, subject to no qualifications. We cannot agree with this contention. It would be to ignore the fundamental basis of a property right in waters from the public streams in the state. It would also be in conflict with the terms of the decree which awarded to the owners of The Chamberlain Ditch this priority, and we are of opinion that it stands on the same footing, and is to be tested by the same principles, rules and regulations as all other priorities in the state, awarded for the same purposes after the adoption of the Constitution, except where the latter are classified in that instrument, and that the language in the Constitution "not heretofore appropriated" was not intended to do other than to recognize the rights of appropriators of waters then in existence, the same as it would those which the section grants to others thereafter to be acquired, except as above stated. *Strickler v. Colorado Springs,* 16 Colo. 61, 26 Pac. 313, 25 Am. St. 245; *Milling & Elevator Co. v. Larimer & Weld Irr. Co.,* 26 Colo. 47, 56 Pac. 185.

For the reasons stated the judgment is reversed and the cause remanded for further proceedings as the parties may be advised not inconsistent with the views herein expressed.

*Reversed and remanded.*

Chief Justice GABBERT and Mr. Justice TELLER concur.

Decided December 2, A. D. 1914. Rehearing denied April 3, A. D. 1916.