## No. 11,506.

REORGANIZED CATLIN CONSOLIDATED CANAL CO. *v.* HINDER-
LIDER, ET AL.

Decided January 24, 1927.   Rehearing denied February 21, 1927.

Action involving distribution of irrigation water.
Judgment of dismissal.

## *Affirmed.*

1. RES JUDICATA—*Water Decree—Contract—Public Policy.*  The objec-
tion that a contract concerning the distribution of water is against
public policy, may not be urged against it after it has been adjudged
otherwise by court decree, and the question cannot be relitigated by
the same parties or their privies.

2. WATER RIGHTS—*Change of Point of Diversion—Decree Construed.*  A
decree for change of point of diversion of water, in which is em-
bodied a contract between some of the parties as to distribution of
the water, construed.

3.      *Change of Point of Diversion—Parties.*  In every action to change
point of dversion, the court must determine whether an objector has
an interest before it can decide whether he has a right to object.

4.      *Change of Point of Diversion—Decree—Construction.*  In an ac-
tion for change of point of diversion in which the rights of some of
the parties were settled by contract, the court declined to construe
the contract, but decreed that diversion should be subject to the con-
tractual rights of the parties, leaving the question of the meaning of
the contract to the water officials.

5.      *Change of Point of Diversion—Issues.*  In a proceeding to change
point of diversion, no rights may be tried except in so far as may be
necessary to decide whether injury will be done by the transfer, but
contractual rights of the parties concerning distribution of the water
should be considered.

6. PLEADING—*Water Rights—Distribution—Contract.*  Complaint in an
action to change the distribution of water by officials which shows
that a decree of transfer was made subject to a contract between
parties, concerning the transferred water, and that the distribution
was according to the contract, held bad.

7.     *Motion to Make More Specific.*  A motion to make more specific should be granted only for the purpose of enforcing rules of certainty and clearness of statement in general never to compel allegations of evidence or of matters in confession and avoidance.

### On Rehearing.

8.  WATER RIGHTS—*Decree—Parties.*  While water officials are perhaps not technically privies to the parties in litigation involving the distribution of water, they are bound by, and must distribute water in accordance with the decree of the court to the same extent as though they had been made parties.

9.     *Decree—Construction.*  Where a court decree .for the change of point of diversion of water is made subject to a contract concerning distribution, without a construction of the contract, the water officials must interpret it until objection is made, and the matter judicially determined.

*Error to the District Court of Bent County, Hon. A. F. Hollenbeck, Judge.*

Mr. FRED A. SABIN, for plaintiff in error.

Mr. H. L. LUBERS, for defendants in error.

*Department One.*

MR. JUSTICE DENISON delivered the opinion of the court.

A DEMURRER to the amended complaint of plaintiff in error was sustained, it elected to stand, its bill was dismissed and it brings error.

The following are the facts necessary to an understanding of the situation: The plaintiff in error, the Las Animas Consolidated Canal Company, and the Fort Lyon Canal Company, which we shall call the Catlin Company, the Las Animas Company and the Fort Lyon Company respectively, own ditches with headgates in the Arkansas river. The Catlin has the upper, the Las Animas Company the lower, about thirty miles below, and the Fort Lyon is about half way between them.

The original decree of adjudication of priorities gave to the Catlin ditch 248 second feet of date December 3, 1884; to the Las Animas ditch, called the Jones ditch, 44.3 second feet of date February 10, 1890, and to the Fort Lyon ditch 164.4 second feet, of date April 15, 1884.

November 4, 1897, the Las Animas Company procured an amendment to this decree whereby its priority was changed to April 10, 1875. Afterwards the Catlin Consolidated Canal Company, predecessor of the present Catlin Company, brought a suit to set aside this amendatory decree, alleging that it was obtained by fraud on the court.

December 27, 1901, the Catlin Consolidated Company, the Las Animas Company and the Fort Lyon Company entered into a contract which recited, inter alia, that while the Las Animas Company protested that the amendment was valid, yet it desired to get rid of the suit by surrendering its priority so far only as it affected the Catlin and Fort Lyon ditches, and it was therefore by said contract agreed that said Catlin Consolidated Company should immediately dismiss its said suit and that in consideration thereof and of the premises above recited the Las Animas Company would call for no water for its ditch till the senior priorities of the Catlin Company and the Fort Lyon Company had been satisfied; that the amendatory decree should remain effective as to all other ditches; that a copy of the contract should be furnished to the water officials to guide them in distribution; that upon every breach by the Las Animas Company it should pay $1,000 liquidated damages; and that the Catlin Company and the Fort Lyon Company would have nothing to do with any further action to annul the amendatory decree.

February 25, 1905, the present Catlin Company having succeeded to the Catlin Consolidated Company, the Las Animas Company conveyed to it 22 of said 44.3 second feet, and the Catlin Company conveyed to the Las Animas Company 22 second feet of its priority of 1884. Au-

gust 21, 1905, the Catlin Company obtained a decree per.-mitting the change of the point of diversion of the 22 second feet, so purchased, to its headgate and of the 22 s. f. sold by it to the Las Animas' headgate.  The Fort Lyon Company was a party to this proceeding, answered, set up the contract, and claimed protection of its rights thereunder, but with such protection consented to the transfer.  The decree which permitted the transfer contained the following: "That as to the matters and things set out in the answer of the Fort Lyon Canal Company, the court doth make no findings construing the contract therein set out, but this decree of transfer shall be and is subject to the terms and conditions thereof and to the rights arising under and by virtue thereof and accruing to the Fort Lyon Canal Company.   *   *   *"

From 1905 to 1910 the water officials distributed the water to the Catlin ditch, as upon a decree for 22 second feet of date April 10, 1875, but from 1910 to 1917 they at times failed and refused so to do, but turned out the water according to the contract.  The Catlin Company then brought the present suit against the state engineer, the division engineer and the water commissioner of the district, to compel them to turn out the said 22 second feet to plaintiff as of April 10, 1875.

The defendants demurred for want of facts and for other reasons.  The principal defect in the complaint, as defendants claim, is that it shows that the decree of transfer was made subject to the contract and that therefore distribution of the transferred water must be according to the contract; that they are so distributing it and that since the complaint seeks to compel them to do otherwise it must fail.

We think the argument is sound.  The plaintiff makes two arguments against it: (1) It says that the contract is against public policy.  (2) It says that the meaning of the transfer decree is not that the contract was to be followed by the water officials, but merely that the transfer was to

be made subject to whatever rights under the contract the Fort Lyon Company might thereafter be able to enforce in the courts.

The first point is res adjudicata by the transfer decree. If the contract is contrary to public policy it has been adjudged otherwise, and the question cannot be relitigated between the same parties or their privies, and the defendants, water officials, are in privity with the Fort Lyon Company. They have no interest of their own. They must obey the decree. True, if the plaintiff is right on the second point, this question is not res adjudicata, because in such case the court left the question of the contract open, untouched.

Taking up, then, the second point: What does the transfer decree mean? Our understanding of that part of it which we have quoted is that the court will not attempt the construction, i. e., determination of the meaning of the contract (Bouvier), but says that, whatever it means, it is to be regarded in the distribution of water. This is the ordinary and obvious meaning of the words of the decree. The interpretation by the plaintiff is merely a possible one and is rendered improbable by the statement that the transfer is made subject to the ''terms and conditions'' of the contract and to the ''rights arising under and by virtue thereof.'' The effect of the transfer decree is to say that the contract is valid and must be obeyed, but that if it is obeyed the transfer will not injure the Fort Lyon Company and will be permitted.

In every action to change the point of diversion the court must determine whether an objector has an interest before it can decide whether he has a right to object. *Bates v. Hall*, 44 Colo. 360, 363, 364, 98 Pac. 3. The determination that he has an interest, then, is within the jurisdiction of the court in such a case and so is res adjudicata between these parties. The court declined to define the rights under the contract, but decreed that the right to divert at the Catlin headgate was subject to those

rights, and therefore required defendants to respect them. This leaves the question of the meaning of the contract to the water officials. The complaint does not show that they were not following it, nor that the order of distribution prayed for is according to it. How then, can the complaint be sufficient?

The plaintiff urges that these matters could not be considered in a proceeding to transfer the point of diversion, and it is true that no rights may be tried in such a proceeding except in so far as may be necessary to decide whether injury will be done by the transfer. Here, however, came the Fort Lyon Company saying "we have no objection to the transfer if our rights under this contract, which have been acquired since the last adjudication of rights in this district, are protected." Clearly the court must consider such a claim. *Bates v. Hall, supra.*

The plaintiff says that the contract has no place in this case because, it claims, in a suit to compel delivery of water according to a decree, only the decree can be considered, and the water officials cannot set up the rights of other parties; but, conceding the premises, we have here another decree, i. e., the transfer decree, which specifically requires them to obey the contract. We see no escape from the conclusion that the demurrer for insufficient facts was rightly sustained.

Though on this record we cannot reverse the case on such ground, we think it was wrong to grant the motion to make the original complaint more definite and certain. The result was, as is frequently the case, to compel plaintiff to plead matters in confession and avoidance of his own complaint. Such motion should be granted only for the purpose of enforcing the rules of certainty, i. e., of time, place, quantity, quality, value, names of persons, and clearness of statement in general, never to compel allegations of evidence or of matters in confession and avoidance.

The foregoing considerations make it unnecessary to refer to the other questions which are raised by the record.

The judgment is affirmed.

MR. CHIEF JUSTICE BURKE, MR. JUSTICE WHITFORD and MR. JUSTICE SHEAFOR concur.

### On Rehearing.

It is urged that the water officials are not privies to the Fort Lyon Company. Perhaps not technically, but what we mean is that they must turn out the water according to the judgment of the court and so are bound thereby as if they had been parties thereto. We do not see how our opinion could be misunderstood on that point.

Nor do we see how it could be misunderstood on the question of the duty of the officials to distribute according to the contract. When the court ordered distribution according to the contract the same became a part of the decree. True, the officials must thereupon interpret the contract until objection is made, but then the courts. In this respect the contract is like every other part of the decree.

Rehearing denied. Judgment affirmed.

MR. CHIEF JUSTICE BURKE, MR. JUSTICE WHITFORD and MR. JUSTICE SHEAFOR concur.