No. 13,268.

KURTZ ET AL. *v.* REORGANIZED CATLIN CANAL COMPANY ET AL.

(41 P. [2d] 239)

Decided February 4, 1935.

Mr. C. E. Sydner, Mr. A. W. McHendrie, for plaintiffs in error.

Mr. Henry C. Vidal, Mr. Arthur C. Gordon, for defendant in error, Fort Lyon Canal Company.

*In Department.*

Mr. Justice Hilliard delivered the opinion of the court.

This is a suit, begun December 17, 1931, to quiet title to water rights based on a supplemental statutory adjudication proceeding entered November 4, 1897, in favor of the Las Animas Consolidated Canal Company, a Colorado corporation, one of the defendants, under and through which plaintiffs claim by virtue of stock interest. The other defendants, also Colorado corporations, were the Reorganized Catlin Canal Company and the Fort Lyon Canal Company. The Fort Lyon company answered, pleading a contract in modification of the decree of November 4, 1897, entered into by the three companies December 27, 1901, and, predicated on the same contract, cross-complained as to plaintiffs and its codefendants, praying judicial approval of the modifying contract. The

other defendants did not answer the complaint or cross-complaint, nor do they appear on error. Plaintiffs replied in denial and affirmatively to the general effect that as to them the contract was void. Whatever further it maybe necessary to say of the pleadings will appear in the course of our discussion. Suffice to say that the issue as to the legal sufficiency of the contract of December 27, 1901, challenged by plaintiffs and maintained by the Fort Lyon company, was presented and became the controlling question. The court resolved in favor of the validity of the contract, dismissed plaintiffs' complaint and granted the Fort Lyon company's cross-complaint. Plaintiffs assign error.

It appears that prior to 1896, defendants, organized to divert and distribute water from the Arkansas river for irrigation purposes, had been decreed to enjoy through their ditches certain priorities, that is to say: The Catlin company 248 second feet as of December 3, 1884; the Fort Lyon company 164.64 second feet as of April 15, 1884, and the Las Animas company 44.3 second feet as of February 10, 1890; that November 4, 1897, in a supplemental proceeding, the Las Animas company obtained a decree changing the date of its priority from February 10, 1890, to April 10, 1875; that September 26, 1900, the Catlin company, in behalf of itself and the Fort Lyon company, alleging that the amendatory decree of November 4, 1897, had been obtained by fraud, filed suit and sought to have the decree vacated, to which the Las Animas company answered in denial; that December 27, 1901, in spirit of accommodation, and upon stated consideration, the parties to the litigation and the Fort Lyon company, reciting the Catlin company's priority of 248 feet of water and the Fort Lyon company's priority of 164.64 feet, as of respective dates mentioned above, entered into contract whereby the action to cancel the supplementary decree was dismissed, and the Las Animas company forewent its November 4, 1897, decretal right to water so far as it interfered with the "senior priorities of the Catlin Canal

and the Fort Lyon Canal," as fixed in the original priority decree; that February 25, 1905, the Las Animas company and the Catlin company entered into a further contract, which was subsequently approved and ratified by the stockholders of the Las Animas company, whereby the said companies agreed to exchange certain priority rights, in conformity to which the Las Animas company conveyed to the Catlin company 22 feet of its 1875 priority of 44.3 feet, and the Catlin company conveyed to the Las Animas company 22 feet of its 1884 priority of 248 feet; that August 21, 1905, in a proceeding to that end by these companies and the Fort Lyon company, the point of diversion of the 22 feet purchased by the Catlin company was changed to its headgate and the like purchase by the Las Animas company to its headgate; that in the second contract and the change of diversion decree as well, the rights of the Fort Lyon company set out in the earlier contract were specifically recognized and preserved.

It is important to note that throughout the history of the procurement and enjoyment of the water rights involved, the three companies were the moving factors and sole entities. They, not their several stockholders, collectively or individually, instituted, or otherwise engaged in, all the adjudication proceedings there were, and the priority decrees were granted to the companies by name, and only to them. Also, that only they engaged in and compromised and settled the suit where the supplemental priority decree of November 4, 1897, was attacked for fraud. Likewise, the companies, as such, made and entered into the several contracts having to do with the same matter. Of the contracts, is the one of December 27, 1901, said by plaintiffs to be void. Their challenge of the contract is sufficiently comprehended in the following contentions: (1) That the decree of November 4, 1897, having attached, the parties (identical) to the decree and contract, were powerless to work the changes provided in the contract; (2) that the contract was without consideration; and (3) that the contract was ultra vires.

1. That the companies could not contract in derogation of the decree, is asserted on authority of *Forker v. Hopkins,* 64 Colo. 325, 171 Pac. 361. There, not as here, the contract preceded the decree. The court's announcement that the decree superseded the "contract or agreement entered into by the parties prior thereto," is not equivalent to saying that the parties to the decree, competent otherwise, and the only ones interested in the subject of the decree, could not subsequently agree to change the manner of enjoyment of their decreed priority rights. The contract does not import evil, nor may it be said that invalidation attends inherently. Neither the priority statute nor any rule of law otherwise, of which we are advised, militates against freedom of contract in the premises. It is urged, however, that since plaintiffs, stockholders, and others in like situation, constituting those really in interest, did not formally approve the contract, it was and remained void as to them. We think the answer is twofold, both properly pleaded by the Fort Lyon company.

First. The contract of February 25, 1905, between the Las Animas and Catlin companies, approved by the Las Animas stockholders, as we have seen, specifically provided for the protection of the rights of the Fort Lyon company under the contract of December 27, 1901. This action of the Las Animas stockholders, taken after more than three years, and in full light and understanding, not questioned, is not less effective of stockholder approval of the original contract than had approval been immediate. This view is probatively supported in the change of diversion decree of August 21, 1905. There, all three companies appearing, the Fort Lyon company insisted on recognition of the challenged contract. The court, while not construing the contract, provided that the decree should be "subject to the terms and conditions thereof and to the rights arising under and by virtue thereof to The Fort Lyon Canal Company." In *Reorganized Catlin Co. v. Hinderlider,* 80 Colo. 522, 526, 253 Pac. 389, dis-

cussing this decree, Mr. Justice Denison, speaking for the court, said that "The effect of the transfer decree is to say that the contract is valid."

Second. We think laches operates adversely to plaintiffs. For thirty years, lacking ten days, they, and their predecessors in ownership of stock in the Las Animas company, took no action in opposition to the contract of December 27, 1901, and plaintiffs themselves, owners of the stock since July 26, 1915, remained quiescent for more than sixteen years. In the early years of their enterprises the companies litigated and contracted among themselves, but it does not appear that they purposed, or even wrought—the situation fairly weighed—other than in the interest of their respective stockholders. What they did by contract, or accomplished by decree, twenty-five or thirty years ago, no fraud or concealment attending, should not, as we conceive, be subject to this belated attack.

2. We do not regard the contract of December 27, 1901, as lacking consideration or resting on illegal consideration. The parties were engaged in litigation fraught with serious consequences. Rather than prosecute the suit to uncertain judicial determination, they made mutual concessions, the terms of their agreement being evidenced by the contract. As we have previously observed, there is no indication that the companies, or any of them, intentionally, wickedly, corruptly, or otherwise, or in fact, abandoned or disregarded the interest of their stockholders. Nor was what they did attended with public interest. "They alone," as we said in *Comstock v. Larimer and Weld Co.*, 58 Colo. 186, 194, 145 Pac. 700, "were interested in the subject-matter of the suit and its object."

3. Considering the broad purposes of the Las Animas company, as set forth in its articles, and as naturally pertain to irrigation companies, we are of opinion that in compromising the suit brought against it in the matter of its amendatory decree of November 4, 1897,

and entering into the contract of December 27, 1901, in relation to the subject matter of the suit, it acted within the reasonable scope of its powers.

We perceive no error. Let the judgment be affirmed.

MR. CHIEF JUSTICE BUTLER and MR. JUSTICE BOUCK concur.