Wilson, J.,
delivered the opinion of the court.
On December 7, 1888, plaintiff, who is appellant in this court, borrowed from defendant Delia A. Miller the sum of $2,000, for which he executed his promissory note payable to the order of said defendant, one year after date with interest at 10 per cent per annum, payable semiannually. At the same time to secure the payment of the note plaintiff executed and delivered a certain deed of trust conveying certain real estate to defendant Williams, as trustee. There were various extensions of the time of payment of the note by defendant Williams, acting as attorney and agent for defendant Miller.
On September 10, 1891, plaintiff paid all interest accrued to September 16, 1891, and secured an extension of the time of payment of the note to September 16,1892. On this date plaintiff became in default for both principal and interest according to the terms of the extension and remained so until November 19,1892, when he paid the interest due on September 16, preceding. On December 22 following, he was granted another extension which was in writing and reads as follows:
*155 “ Denver, Colo., Dec. 22, 1892.
“ Mr. Jonas Washburn, Montclair, Colo.
“ Dear Sir: I am in receipt of yours of the 19th inst., inclosing $40.00 for extension of your note to Miss Delia A.. Miller for two years, which is accordingly done. Please accept thanks for the remittance.
“Very truly yours,
“ F. A. Williams.”
“ P. S. Please inform me whether the interest of Crippen, Lawrence & Co. is fully paid up. F.”
Thereafter no further payments of interest were made. In January, 1894, the property described in the deed of trust, was advertised for sale, defendant Miller, who still remained the legal holder of the note, claiming that default had been made in the payment of interest and having elected in pursuance of the provisions of said deed of trust, to declare the note due and payable. In accordance with said notice, sale was made on February 15, 1894, at which defendant Miller became the purchaser for the amount of her note, interest and expenses. Trustee Williams thereupon executed a deed conveying to her the property described in the deed of trust and notice of sale. On March 27, next thereafter, defendant Miller sold her interest in the real estate, acquired by trustee’s deed, to defendants Bennett & Myers, for the consideration of $2,000, being about $300 less than she had paid therefor and conveyed the same to them by quitclaim deed. On May 26, following, plaintiff commenced suit against all of the defendants herein alleging in his complaint that trustee Williams had no authority or power to make' the sale, there having been no default by him according to the terms of the last extension of time of payment; that the defendant Miller had not elected to declare said note due and payable; that trustee Williams was the sole bidder at said sale and that said pretended foreclosure and sale of said real property was made in pursuance of an agreement and confederation entered into by defendants Williams, Bennett *156 and Myers to injure and defraud the plaintiff and to illegally deprive him of his said property. Plaintiff prayed that the pretended sale by trustee Williams to defendant Miller, be set aside and declared to be null and void and that the trustee’s deed to said defendant be canceled and declared to be of no effect as well as all other conveyances having their source in said sale by trustee Williams to said defendant Miller.
Upon trial the court found the issues in favor of the defendants and rendered judgment accordingly.
Plaintiff brings the case here on appeal.
The principal contention of plaintiff, as we understand it, is that the last extension of the time of payment was a new contract between the parties and that under its terms he could not be in default either as to principal or interest so as to authorize a foreclosure of the deed of trust until the lapse of two years from the time when the extension was granted. Substantially he holds that the provision in the deed of trust, permitting the legal holder of the note to declare it due and payable in case of default in making the semiannual payments of interest or any of them was abrogated by the last extension.
It is expressly admitted by plaintiff in his complaint that all extensions of time of payment of the note were upon the condition that the interest be paid semiannually at the same rate as expressed therein and also in the deed. After having made this concession we cannot see how he can sustain this contention.
It must be undisputed that the extension of the time of payment of the debt, secured by mortgage upon real estate, does not of itself work a surrender or foreclosure of the mortgage security, and we think the true rule is that the agreement for such extension can be construed to include only what is covered by its express terms or follows by necessary implication. The intent and understanding of the parties, if they can be clearly discovered, should control.
It is true that the effect of an agreement for extension of *157 time of payment of a mortgage debt is a novation of tbe debt as respects its maturity, but it can only modify the original condition of the deed of trust or mortgage to the same extent and no further, as if the terms of the agreement had been incorporated into the conditions of the mortgage. Jones on Mort. § 1190; Union Central Ins. Co. v. Bonnell, 35 Ohio St. 365.
Applying this principle, the result of the agreement for the last extension of the time of payment in this case was to modify the condition of the deed of trust only as to the time of the maturity of the principal debt, that is to say, this would be in two years from the time of extension instead of within one year from the date of the note.
All other conditions of the deed of trust, including those by which the maturity of the principal debt might be accelerated, remained unchanged and unmodified. It being conceded that the extension was upon the express condition that interest should be payable semiannually according to the original terms of the note and of the deed of trust, it is not to be presumed that defendant Miller intended to waive the only conditions in the deed by which she could enforce such payment.
According to the original terms of the note the semiannual payments of interest would have become due in June and December. The fact that these dates became changed by reason of plaintiff paying all interest due up to the time when extensions were granted does not defeat the application of this principle. This does not, in our opinion, constitute such a new contract as would modify or change the. condition of the deed of trust in respect thereto. Neither the note nor the deed of trust fixed the precise date when the semiannual payment of interest was due. This depended upon the date of the note and upon the dates of the extensions.
It follows from these views, that the default in payment of interest being admitted the cestui que trust, defendant Miller, had the right to declare the note due and payable *158 and to direct the trustee to sell at the time when notice of sale was given.
As to whether or not such election was made, it is the usual rule, that it is sufficiently declared by the statement to that effect in the public notice of sale as in this instance. Fowler v. Woodward, 26 Minn. 347.
If there was any need of further proof, however, of this fact it is fully shown by the evidence at the trial.
It is unquestionably true as urged by counsel for plaintiff that where the trustee hi a deed of trust is the agent and attorney for the cestui qui trust, Ms action should be scrutinized with great care. In his capacity as trustee he is the representative of both parties to the deed and must in the discharge of his trust obligations treat them with equal fairness and impartiality.
The mere fact, however, that the trustee is the attorney and agent for one of the parties is not sufficient in itself to set aside or invalidate his acts. Before a court of eqMty will interfere to that extent it must further appear that there was an abuse of the trust and a resulting injury to the party compldining. In this case the plaintiff knew, at time of execution of the deed of trust that defendant Williams was the attorney and agent of defendant Miller, and yet during the four years which elapsed between the giving of the deed and the foreclosure, plaintiff does not appear to have complained of this relationship or of any of the acts of the trustee in the execution of the trust. A close examination of the record, disclosed no evidence of an abuse of the trust, but the contrary appears. So far as we can see there was no fraud practiced nor even harshness indulged in by the trustee to the injury or oppression of plaintiff. At the request of plaintiff he exercised his power to secure indulgence and long extensions of the time of payment in order to assist plaintiff in his effort to discharge the debt. Before advertising the foreclosure sale he notified plaintiff of his intention to do so, sent him a copy of the notice when published and even after the sale and the execution of the deed to the *159 purchaser, informed, him that upon the payment of the amount of the debt, Miss Miller would convey to him, her. right in the property. Three weeks after the sale and several weeks prior to the sale to Bennett & Myers, the trustee wrote to plaintiff that if he could give any assurance of the payment of $1,000 in cash he thought that the matter could be arranged to wait on him a reasonable time for the balance. Under these circumstances we think that the plaintiff had no cause to complain of the trustee’s conduct.
It is further insisted by plaintiff that defendant Miller waived her right of election to declare the note due on account of default in payment of interest by unreasonable delay after the default occurred. This might be urged with some reason if the election was based solely upon the default in the payment of interest due March, 1898, but another default occurred on September 16, 1893, and we do not think that the time which thereafter elapsed before the election was exercised, was unreasonable. What constitutes a reasonable time is not definitely fixed either-by law or custom but must depend upon the circumstances of each particular case. It appears from the evidence and is also a matter of common knowledge, that during the years 1893 and 1894, great financial stringency prevailed throughout the country so that it was difficult to secure a loan of money upon even the best security. We do not think therefore that the indulgence of a creditor on such an occasion as this should be construed against him. The delay was for the benefit of plaintiff, was for the purpose of enabling him to sell the land or otherwise raise money to discharge the debt and under these circumstances four months was not, in our opinion, an unreasonable time within which to make the election.
The rule contended for by plaintiff, that the holder of the note must in such case exercise his power of election at once upon default being made, is a harsh and unreasonable one. It would prevent a creditor from extending any indulgence whatever to his debtor except at the risk of ultimately finding his security insufficient to meet the accumulated obligar *160 tion. It would be grossly inequitable and unjust and not such as should be enforced by a court of equity. Campbell v. West, 86 Cal. 202; Fletcher v. Dennison, 101 Cal. 294.
It is also contended by plaintiff that the sale should be set aside because the price realized was inadequate. This claim is not sustained by the evidence. Plaintiff himself placed a large valuation on the land but he is not supported in his estimate of value. Other witnesses placed the valuation at an amount approximating that which was realized at the foreclosure sale, considering other incumbrances, which were upon the land and which the purchaser was compelled to assume.
It was held by this court in Martin v. Barth, 4 Colo. App. 349, that a sale will not be set aside merely on account of inadequacy of price unless “the case very clearly demonstrates that the difference between the value of the property and the price that it brought is such as to shock the judgment and conscience of the chancellor.” The facts of this case do not bring it within this rule.
Plaintiff also assigns for error the admission of improper testimony. The trial was to the court and the rule in such cases as to the admission of improper testimony is not so rigid as when the trial is to a jury. Especially is this true where it is a proceeding in equity. In these cases the judge being the same who passes upon the admissibility of the testimony as well as its force and effect, is presumed to have been controlled in reaching a conclusion by such testimony only as was competent and material. Besides the testimony against the admission of which plaintiff complains in this ease was not of such a character as to have influenced the court in arriving at a different conclusion even if the objection thereto had been sustained.
It is also alleged, and urged as a reason for setting aside the sale, that trustee Williams was the sole bidder thereat. There was no evidence in support of this, and it was denied by the trustee in his testimony as a witness.
Our views upon the questions raised and discussed are *161 decisive of this case and render it unnecessary for us to consider what relation defendants, Bennett and Myers, bore to the transaction. There was no evidence whatever of any collusion between them and the trustee Williams to defraud or wrong plaintiff in any manner, and none placing them in any other attitude than that of innocent purchasers.
Being unable to perceive any material error, the judgment will be affirmed.

Affirmed.