[No. 8074.]

## AFFOLTER ET AL. V. ROUGH & READY IRRIGATING DITCH COMPANY.

1. PARTIES—*Necessary.* A junior appropriator praying an adjudication that a senior appropriator has abandoned his right to a portion of the water awarded to him by the general adjudication decree is not under duty to unite all other appropriators from the stream, or even in the district, whose rights are, under such decree, junior to those of defendant. (521.)

The effect of the judgment as to appropriators not made parties, not determined. (522.)

2. WATER RIGHTS—*Adjudication Decree—Effect.* A general adjudication decree is not to be revised in an action where the abandonment by the appropriator of a portion of the volume awarded to him is sought to be established. (524.)

3. —— *Abandonment—By Non-User.* Where, for many years, the ditch by which the water awarded to defendant by a general adjudication decree was of a capacity to carry only a portion of the volume awarded, *held* that the residue had been abandoned. (525.)

The use of the whole of such diminished volume, alternately, at different periods, by those in interest, *held* without effect upon the question of abandonment. (526, 527.)

4. —— *Matters Necessary to be Determined.* Where, in an action to establish the abandonment by a senior appropriator, of a portion of the volume of water awarded to him, it appears that defendant was originally awarded a volume in excess of what is now conceded to him, it is not necessary to determine the volume of the original award. (524.)

5. EQUITY—*Laches.* A junior appropriator who would avail himself of the abandonment, by a senior, of water awarded to him by a general adjudi-

cation decree, is not required to institute his action to establish such abandonment, immediately upon its occurrence. Upon such abandonment, the junior appropriator is in possession, to the extent to which he enjoys its benefits; and until claim to the water, under the original right, is again asserted, he is not guilty of laches in failing to seek judicial establishment of the abandonment. (522, 523.)

*Error to Boulder District Court.* Hon. HARRY P. GAMBLE, Judge.

Mr. EDWARD AFFOLTER, Mr. WILLIAM V. HODGES, and Mr. MASON A. LEWIS, for plaintiffs in error.

Mr. F. P. SECOR, Mr. JACOB S. SCHEY, Mr. GRAY SECOR, and Mr. L. A. BOWMAN, for defendant in error.

Mr. JUSTICE HILL delivered the opinion of the court.

The defendant in error (a corporation) the owner of an irrigation canal taking its water from the St. Vrain Creek in Water District No. 5, Division No. 1, with a junior appropriation to that of The South Flat Ditch, which takes its supply from the same stream, in the same district, brought this action against the plaintiffs in error as owners of the South Flat Ditch alleging facts which, if true, constitute an abandonment by the owners of The South Flat Ditch of a part of its decreed priority. It prayed judgment accordingly. Upon issues joined, the case was referred to a referee who took evidence and made findings, which were thereafter approved by the court, and decree entered accordingly, which is to the effect that all of the appropriations, rights and priorities for the use of water acquired under or by means of the South Flat Ditch, except 16.70 cubic feet of water per second of time, had been abandoned, etc.

A special demurrer for defect of parties plaintiff was overruled. This question was thereafter repeatedly raised in different ways. The complaint alleges the statutory proceeding for adjudication of priorities in Water District No. 5, which discloses numerous ditches with junior priorities

to that of defendants in this district, taking water from the St. Vrain Creek. It alleges that in time of scarcity there is not sufficient water in this stream to supply the reasonable needs of the plaintiff (the defendant in error here), after first supplying ditches having decrees and rights to the use of water in the district, senior to the rights of plaintiff. It is claimed that all the owners of junior priorities in this district should have been made parties plaintiff, or upon refusal then defendants to the action. We cannot agree with this contention. It is true that an abandonment of water by an earlier appropriator will quite often, at certain times, be a benefit to many subsequent appropriators on the same stream in the district. It is likewise true that at times it will or may prove a benefit to subsequent appropriators in other districts in the same water division, but in the absence of a statute requiring it, this does not compel the plaintiff to make all such others either parties plaintiff or defendant; it might be impossible to ascertain all of such ditches, or all of the particular ones in the district, or in other districts which would be affected. This is particularly true in a case where an abandonment is sought on one stream which is a tributary of another, etc., and especially where the extent to which, and time when, certain of them might be interested is remote or uncertain. Numerous suits of this character have heretofore been before this court, brought by one or more plaintiffs where numerous other ditches might be benefited, but we do not recall a single instance where the court has required all subsequent appropriators in the district or in other districts in the same water division, to be made parties. So far as any citations are furnished this question has never heretofore been raised in this court.

Without legislation upon the subject, we are of opinion that the plaintiff as a junior appropriator from the St. Vrain Creek had the right to bring this action, when the effect of

such judgment would be of special benefit to it. Whether the result of such an action, if unsuccessful, would be *res judicata* as to other appropriators not made parties, is unnecessary to determine. If such is not the case and the hardship or injustice will follow as claimed, the remedy lies with the legislature and not with the courts. A similar condition existed as to parties concerning the change of point of diversion prior to the enactment of remedial legislation upon the subject in 1899. In *Lower Latham D. Co. v. Bijou I. Co.*, 41 Colo. 212, 93 Pac. 483, in commenting upon this question, at page 217, (93 Pac. 484) this court said:

"But before this statute was passed the owner of a right to use water from any of the streams of this state for irrigation might bring an equitable action against one respondent alone, and have determined as against him the right to change the point of diversion. * * *

One of the objects of the remedial statute under which this proceeding is being conducted was to put a stop to a multiplicity of actions and not to allow such changes to be made until all persons who might be affected thereby are notified and given an opportunity to be heard."

This case also recognizes the defect in the statutes in not requiring notice to ditches outside of the district from which the water was to be changed, which might be affected, but held that this did not create a defect of parties. We see no material difference in principle between the two classes of litigation concerning parties, and until there is legislation concerning this class, we cannot agree that all subsequent appropriators on the stream or even in the district are necessary parties.

The defendant interposed a plea of laches in bringing the action. To sustain it they claim, that the plaintiff alleges an abandonment by intention in 1882, for which reason it operated, if at all, instantly; that this action was not brought

until 1911, twenty-nine years thereafter, for which reason upon account of laches in bringing it, etc., it should have been dismissed.   We cannot agree with this contention. The complaint alleges facts, which, if true, are sufficient to show an absolute abandonment, one of which is a non-use of the waters from the year 1882, a period of twenty-nine years, with the intention to abandon.   Evidence of non-use for a long period of time is competent as bearing on the intention of the parties.   We do not understand that this is of that class of cases which requires that an action be brought immediately after such abandonment takes place, or that a subsequent appropriator need bring it until some one again seeks to make claim to it under the decree.   Until this is done, the subsequent appropriator is in possession, to the extent at least that he uses and enjoys its benefits, alleged in this case to have been for twenty-nine years. After abandonment, when it actually takes place, he has no reason for believing that anyone will ever make claim to it again by virtue of the decree under which it was awarded, and until this is done, he cannot be said to be guilty of laches in failing to bring an action to have it declared abandoned.

The original decree did not fix the amount awarded to each ditch in statutory inches, but in "customary inches." In his report the referee "finds from the testimony that the term 'customary inches' used in the said decree, is an uncertain and indefinite term, and cannot be reduced to cubic feet per second of time." It is claimed this finding discloses that the referee in fact attempted a readjudication for this ditch for the reason that he denies the intelligibility of the most important factor of the 1882 decree, viz., the measure of volume used therein. The question is asked how could he ever find or report an abandonment when he had no knowledge of the amount which was awarded.   In some respects this presents a novel feature.   The pleadings also present the unusual feature of the defendants claiming less than

the plaintiff alleges was originally awarded them. The plaintiff alleges that this "1670 customary inches" decreed to defendants' ditch was, by the state engineer, in 1887, computed to be 71.43 cubic feet of water per second of time. The defendants answer that their decree of "1670 customary inches" amounts to approximately 41 cubic feet of water per second of time, hence they claim a much less amount under their decree than the plaintiff alleges was originally awarded them as construed by the state engineer. Such being the state of the pleadings, when the evidence is considered, we find good reasons for the findings of the referee that the words "customary inches" as used in this decree is an uncertain and indefinite term, etc., and his inability to determine the exact amount which was awarded to the defendants' ditch. We do not think this of itself discloses that the referee attempted to readjudicate their rights under the decree. That they were originally awarded a much greater amount than 16.70 cubic feet per second is admitted and the conclusion of law of the referee is that whatever amount that was, that they had abandoned all of it in excess of 16.70 cubic feet per second, for which reason we think it was unnecessary for the referee to determine what the exact amount of the original decree was.

It is claimed that there is an irreconcilable conflict between the finding of facts and conclusion of law by the referee, and that he erred in admitting testimony showing the acreage, the nature of the soil and the amount of water required for its proper irrigation, viz., the needs of the defendants in this respect, and that the result of his work discloses that he attempted a readjudication of these matters and based his report upon the needs of the parties at the time, regardless of their rights under the decree. We agree that a readjudication cannot be had or the validity of the former decree questioned in this kind of a proceeding, but we do not understand that the referee attempted any-

thing of the kind. In addition to his conclusion of law we think his utterances during the trial disclose to the contrary. While there may be an apparent conflict between the referee's findings of facts as set forth in his report and his conclusions of law, we think the latter is abundantly justified by the testimony. It is as follows:

"That by reason of the failure and neglect of defendants, since the date of the decree to the South Flat Ditch, to take and divert from the St. Vrain Creek by means of the South Flat Ditch any water whatsoever in excess of sixteen and seventy one-hundredths (16.70) cubic feet per second of time, and for the further reason that the said defendants have not, since the date of the decree granting to said ditch the right to take from the St. Vrain Creek sixteen hundred seventy (1670), customary inches of water, taken, diverted or beneficially used any water whatsoever in excess of sixteen and seventy one-hundredths (16.70) cubic feet per second of time, they have abandoned the right given them by said decree to take or divert from said St. Vrain Creek by means of their said South Flat Ditch all waters in excess of that amount."

We have given the testimony careful consideration in connection with the physical conditions shown to be in existence during the twenty-nine years preceding the bringing of this action, and we fail to perceive how the court could have consistently adopted any other legal conclusion more favorable to the defendants than the one recommended by the referee, and were all the testimony complained of eliminated, we think the result should not have been more favorable to them than it was, and that the full measure of proof exacted to warrant the conclusion of law adopted by the court was fully supplied. *Parsons v. Ft Morgan Co.,* 56 Colo. 146, 136 Pac. 1024; *San Luis Valley Irr. Dist. v. Alamosa,* 55 Colo. 386, 135 Pac. 769; *Green Valley Co. v. Frantz,* 54 Colo. 226, 129 Pac. 1006; *Alamosa Creek Co. v. Nelson,*

42 Colo. 140, 93 Pac. 1112; *Platte Valley Irr. Co. v. Central Trust Co.*, 32 Colo. 102, 75 Pac. 391; *New Mercer Ditch Co. v. Armstrong*, 21 Colo. 357, 40 Pac. 989; *Sieber v. Frink*, 7 Colo. 148, 2 Pac. 901.

As proof that the evidence is insufficient to support the decree, counsel, among other things, refer to testimony tending to show that the amount of water represented by the different interest of each co-owner in the ditch has, within the past twenty odd years, been used by, practically, each owner upon his lands thereunder; they maintain that this is evidence of a beneficial use of the entire amount represented by the original decree, for which reason none of it can be declared abandoned. If there is testimony sufficient to show such use, it is not shown that each of the joint owners did, or could have used the entire amount represented by his alleged interest in the original decree at the same time; this was a physical impossibility for the reason that it was beyond the capacity of the ditch to carry. Counsel do not seriously dispute this, but arrive at their conclusion by deductions in showing that at times the water has been run in what is recognized in farmers' parlance as "in sections," that is, some of the owners at times use larger amounts than their *pro rata* of the whole, during which period others use none, then when the first users finish others take it all, and so on, until it has been thus passed around. In our opinion this discloses nothing more than a mutual exchange by different consumers and does not tend to overcome the evidence of intent to abandon made by showing that for a long period of years there was a non-use of any in excess of the then carrying capacity of the ditch.

It is questionable (although unnecessary to determine) whether the introduction of the testimony alleged to be incompetent was not the cause of the defendants' being held not to have abandoned more of the waters originally decreed them than would have been the case had the testimony been

limited to the physical conditions of the ditch, the acreage thereunder and the amount taken and applied to a beneficial use during the twenty-nine years preceeding the bringing of the action, and the other testimony to which no complaint is made, but eliminating this, the conclusion reached makes the question of the admissibility of this testimony unnecessary to determine.

The judgment is affirmed. The former opinion is withdrawn; this one filed in lieu thereof, and the petition for rehearing denied.

*Affirmed.*

Decision *en banc*.

Mr. JUSTICE WHITE and Mr. JUSTICE TELLER dissent.

Mr. JUSTICE TELLER, dissenting.

I am of the opinion that defendants' application to have others, who are interested in the suit, made parties should have been granted. The fact that these parties are very numerous does not change the legal situation. Our Code provides that in case the parties are numerous and it is impracticable to bring them all before the court, one or more may be directed, by order of the court, to sue or defend for the benefit of all.

Every suit which seeks to have any part of a decreed water right declared abandoned is of interest to every water user in the district having a junior right. All such users are directly interested that the quantity of water held to have been abandoned shall be as large as possible. Every cubic foot of water found to have been abandoned, in effect, adds a cubic foot to the quantity from which all junior rights are supplied. Others have as much interest in the issue of the case as have the plaintiff companies; yet they are left free to litigate this same question, each in his turn. Anyone who thinks that a more favorable result might be obtained by a new suit is at liberty to bring suit. This is the very evil which the equitable rule, affirmed by our Code,

was intended to prevent. If it be considered that the court has discretion in the matter of bringing in new parties, then the court in this instance abused its discretion in not making the order requested.

But more important than this defect in parties is the fact that the referee received in evidence and manifestly made his findings upon testimony which was clearly incompetent.

The record contains a mass of evidence upon the duty of water, to which objection was duly made, and the remarks of the referee clearly indicate that he thought he was authorized to find that all right to water in excess of the quantity necessary to irrigate the land under this ditch had been abandoned.

He finds that all except 16.70 cubic feet per second had been abandoned. How did he arrive at this particular quantity as not having been abandoned, especially in view of the fact that he could not determine what quantity of water was meant by the terms of the original decree? He finds that the total area to be irrigated was 835 acres, and the decree leaves to this land exactly one cubic foot of water to each tract of 50 acres. This fact, taken in connection with the evidence as to the duty of water, and the needs of this land, makes it practically conclusive that it was upon that evidence that the finding was based. There is no other evidence upon which it appears that it could have been based.

Further, the finding admits that in times of high water the plaintiffs in error had used more than 16.70 cubic feet of water. That being so they cannot be held to have abandoned all but 16.70 cubic feet. They were using water under a decree giving them the right to a quantity admittedly largely in excess of that allowed by the referee, and it must be assumed that they were receiving it under the decree, at least to the extent of the amount fixed therein. In the

case of *Drach v. Isola*, 48 Colo. 134, 109 Pac. 748, relied upon to support the finding, the water used in flood times was in excess of the amount decreed, and could not, therefore, it was held, establish a use under the decree.

The findings ignore the undisputed testimony of defendant in error's own witnesses that the ditch had a capacity to carry, and had, within the time in which non-use was relied upon to show abandonment, carried far more water than the decree allows.

From a careful reading of the record I am forced to the conclusion that the cause was tried and determined on the theory that plaintiffs in error should be held to have abandoned their rights to so much of the water decreed to them as is not actually needed for their lands.

This amounts to a readjudication of the right, and is an amendment of the original decree.

However desirable it may be that parties be prevented from using water in excess of their needs, the question of excessive use cannot be tried in a suit for abandonment. For the reasons above stated I cannot agree with the majority opinion.

I am authorized to state that Mr. Justice White concurs in so much of this opinion as relates to the evidence and findings, and upon the question of parties he expresses no opinion.

Decided October 4, A. D. 1915.  Rehearing denied February 7, A. D. 1916.